STEWART *vs.* THE STATE, use of RIGGIN, *et ux.*—June, 1828.

On a *case stated*, the sole duty of the court is to declare the law on those facts only which the statement contains, and its power is restricted within the same limits, as when called on to give judgment on a special verdict.

So where the question was, whether a bill of sale of property, executed by a father to his infant child, which purported on its face to have been given for a valuable consideration, was adopted by him as a convenient form of conveyance, to make a settlement on his daughter; and the case stated, did not describe it as wholly gratuitous, though there was evidence, from which a jury might have inferred that such was the design of the father—The court held that they could not contradict the facts of which the bill of sale was testimony, and refused to consider the property, thus conveyed to the child, as an advancement.

Inadequacy of consideration alone, untinctured by fraud or circumvention, is not a sufficient ground to vacate a contract otherwise regular. ,

The well settled rule of law, that parol evidence cannot be offered to explain, contradict, or add to the terms of a written contract, does not preclude a representative of the grantor, from going into extrinsic evidence to show the true character and design of a conveyance of personal property, where no effort is made to impeach, or defeat the title of the grantee, or to alter, or impair his rights under it; but the inquiry is into the title of the parties to other property, in which such conveyance is incidentally used as evidence. If the door to such an examination were occluded, the provisions of the act of 1798, *ch.* 101, respecting advancements, would become a dead letter in most cases, where written instruments are used to give validity to the settlement intended.

APPEAL from *Somerset* County Court. Action of debt on the administration bond entered .into by the defendant, (the now appellant,) as administrator of *John C. Stewart*, deceased, on the 13th of October 1822. The following case was stated for the judgment of the county court thereon. It is admitted that *John C. Stewart* died in 1822; that the defendant was appointed his administrator, and gave bond for the faithful performance of his trust. That *John C. Stewart*, in his lifetime was possessed of the following negro slaves, to wit: *Esther*, *Eleanor*, *Ann*, *Ephraim*, *Elizabeth*, *Leah*, and *Sarah*, who came to him by his first wife; and also a bed and furniture, and one desk. That the said *John C. Stewart* had by his said wife an only child, to wit, *Rebecca*, the wife of *Henry Riggin*, for whose use and the use of the said *Rebecca*, this action was brought. That on the 7th of February 1816, the said *Rebecca* being between eight and nine years of age, the said *John C. Stewart* executed to her a bill of sale of the above mentioned

negro slaves, bed and furniture and desk, then in his possession, for and in consideration of the sum of $100. Which bill of sale was acknowledged on the day of its date by the said *John C. Stewart* before a justice of the peace of the county in which he resided, and on the same day enrolled among the records of that county. That shortly afterwards the said *John C. Stewart* intermarried with a second wife, by whom he had two children. That at his death he left a widow, the two children last mentioned, and the said *Rebecca*, his representat.ves. That after the payment of the debts of the said *John C. Stewart*, and the expenses of administration, there is in the hands of the defendant, his administrator, a balance of $2000, to be distributed as        g to law. That the property in the said bill of sale con.        s of much greater value than what would be the said        Distributive share of her father's estate. If on the sta .e s a .mu t of facts, the court shall be of opinion, that the said bill of sale transferring the property therein mentioned to the said *Rebecca*, was an advancement to her, judgment is to be entered for the defendant; otherwise judgment to be entered for the plaintiff for the penalty of the bond and costs, to be released on payment of, &c. A judgment *pro forma* was entered by the county court for the plaintiff on the statement of facts. From which judgment the defendant appealed to this court.

The cause was argued before EARLE, STEPHEN, ARCHER, and, DORSEY, J.

*J. Bayly*, for the Appellant. The balance in the hands of the defendant, the administrator of *John C. Stewart*, of $2000, to be administered according to law, excludes the negro slaves included in the bill of sale from *Stewart* to his daughter *Rebecca*. This action, instituted at the instance of *Riggin*, who had married *Rebecca*, is for the recovery of a distributive share of the personal estate due to *Rebecca*, claiming both the negro slaves, and a distributive share. The defendant refused to pay such distributive share, unless the negro slaves transferred by the intestate to *Rebecca* be reckoned in the surplus of the estate, which was superior to her share. The question for the decision of the court was, whether the transfer of the negro

slaves by the intestate to his said daughter *Rebecca*, and not in-cluded in the personal estate, should be considered an advance-ment by settlement or portion made by the intestate in his life-time to his daughter *Rebecca*, and be reckoned in the surplus; and if equal or superior, that she should be excluded therefrom? He referred to the act of 1798, *ch.* 101, *sub ch.* 11, *s.* 6.

*R. N. Martin*, for the Appellee. The bill of sale in ques-tion appears to be a conveyance of certain personal property for a valuable consideration; and has upon its face all the fea-tures of an ordinary sale of goods and chattels. It is not an advancement within the meaning of the act of 1798, *ch.* 101. 1. To constitute an advancement, it is essential that the pro-perty should appear to have been transferred as a voluntary settlement upon the child, or as a gift for a good considera-tion; and not for a valuable consideration, as is here expressed. 2. It was not competent for the defendant in the court below to introduce parol evidence for the purpose of impeaching the consideration thus stated in the bill of sale; or to show that the true character and intent of the instrument, were different from what they purported to be. 3. Admitting that it was competent to introduce the extrinsic evidence, mentioned in the case stated, for the purpose of proving that there was in fact no monied consideration existing between the parties, and that the real design of the father was to make a gift or settlement upon his child; still it was not within the province of the court to pronounce upon the sufficiency of that evidence to establish facts so inconsistent with the assertions of the deed itself; but the question of sufficiency should have been submitted to a jury.

1. The definition of an advancement, assumed in the *first* position, is supported by the import of the language of the act of assembly of 1798, *ch.* 101, *sub ch.* 11, *s.* 6, and the deci-sions upon the customs of *London* and *York*, and those which occurred after the *English* statute of distributions. 1 *Swinb.* 233. 1 *Madd. Ch.* 628. 2 *Rob. on Wills*, 105, 108. *Ed-wards v Freeman*, 2 *P. Wms.* 436. The doctrine originated first as a custom in *London*, and the province of *York*—was afterwards transplanted into the statute of distributions, and has

been taken from thence by the framers of our act of assembly. The authorities cited are, therefore, strictly pertinent to the subject. And it will be found that an advancement has always been treated as a provision made by a father for his child, upon a good consideration—a *patrimonium,* according to the proper sense of that term.

2 It is well settled, that where one specific consideration is alone mentioned in a deed, the court will not receive evidence, the object of which is to establish any other, or any additional consideration. The existence of any other than that stated, being negatived by the terms of the instrument. 3 *Stark. Evid.* 1004. *Clarkson v Hanway,* 2 *P. Wms.* 203, 204. *Schemerhorn v Vanderheyden,* 1 *Johns. Rep.* 139. *Maigley v Hauer,* 7 *Johns. Rep.* 342. *Howard v Rogers,* 4 *Harr. & Johns.* 278. *Hurn v Soper,* 6 *Harr. & Johns.* 276, 282. The cases in which parol evidence has been admitted, are not applicable to the one in question. They are—1st. Where no consideration being expressed, the party was permitted to prove that which really existed. *Peacock v Monk,* 1 *Ves.* 128. 2dly. Where the deed professed to be founded on one certain consideration, as love and affection, and also upon others, proof was received of the additional consideration; as that was not inconsistent with the import of the deed. 3dly. Where the conveyance was stated to be for divers good causes and considerations, without any specification, it was held allowable to specify them by parol testimony. *Mildmaye's* case, 1 *Coke,* 176. And in cases of imputed fraud. *Filmer v Gott,* 7 *Bro. Parl. Cas.* 70. *The King v Inhabitants of Scummonden,* 3 *T. R.* 474. Upon these principles it is contended, that it was not competent to use the extrinsic evidence in this case for the purpose of rejecting the specific monied consideration expressed in the bill of sale, and substituting in its place one of an entirely different character—as that of love and affection. Particularly as this was not the act of a creditor, seeking to invalidate the deed upon the basis of fraud and collusion; but of the representatives of the father claiming through the medium of his administrator, and in the face of the express and deliberate acknowledgment of the grantor himself. The effect of such testimony would be to negative the terms of the instru-

ment which the parties had chosen as the only true expositor of their wishes and intentions.

3. The proposition stated under the *third* head depends upon the well known distribution of power between the court and jury, and is too obvious to need the aid of either argument or authority. The bill of sale certainly was evidence of the facts asserted by it; and the appellant relied upon the infancy of the daughter, and the difference between the present value of the property transferred, and the monied consideration mentioned in the deed, as circumstances abundantly sufficient to disprove those facts, and show that the real design of the transaction was not what it seemed to be. This is not the place to discuss the sufficiency of those circumstances for such purpose. They manifestly do not carry necessary and irresistible conviction of the falsity of the language of the deed, and the truth of the appellant's defence; and their weight and sufficiency were peculiary within the power and province of a jury.

Dorsey, J. delivered the opinion of the Court. The court being called on to revise a judgment given by the county court on a case stated, their sole duty is to declare the law on those facts only which the statement contains. Inferences of law they are competent to draw; but circumstanced as this case is, it is not their province to make deductions of fact. Their powers are restricted within the same limits, which would be prescribed to them, if they were called on to give judgment on a special verdict.

The bill of sale, upon its face, bears all the solemnities necessary to make it that which it purports to be—a sale of goods and chattels for a valuable consideration. The other admissions in the cause, are evidence which might have been submitted to a jury, to enable them to find the facts—that the consideration in the bill of sale was merely nominal—was never paid, or intended so to be—that the real design of the father was wholly gratuitous, and that he adopted this as a convenient form of conveyance, to make a gift or settlement on his daughter. In doing this they must find facts inconsistent with, and contradictory of, the facts of which the bill of sale is testimony. The exercise of such authority is the peculiar privilege of the jury;

but the court in a case like the present, cannot be called on to exert such a power. The facts to be inferred are not self-evident, irresistible conclusions, arising from the circumstances of the transaction. Inadequacy of consideration alone, untinctured by fraud or circumvention, is not a sufficient ground to vacate a contract otherwise regular. Much less is it conclusive, that no such contract was ever made as that specified in the instrument. But there is no positive proof of any such inadequacy. Although it is admitted, that in 1825 the property conveyed was worth more than $2000, it does not hence necessarily follow, that it was so in 1816, when the conveyance was executed. Nor is the number of negroes irrefragable proof of that fact. They may have been at that time, in such a state of extreme infancy, and labouring under such infirmities, as to have been of no greater value than that specified as their price. Neither does the infancy of the daughter, (as has been insisted on for the appellant,) demonstrate that the consideration money was never paid. She might have had money, independently of her father, in the hands of a trustee authorised to invest it for her benefit; or some relation or friend may have been willing to advance or give her that sum of money to enable her to make an advantageous bargain.

We mean not to say, that a jury would not have been warranted in finding, from the facts admitted, all other facts necessary to establish the defence of the defendant below. All we intend to decide is, that this court cannot infer those facts; and that without them, the conveyance in question cannot be regarded as an advancement within the meaning of the act of assembly.

The well settled rule of law, that parol evidence cannot be offered to explain, contradict or add to, the terms of a written contract, which, it was contended, precluded the appellant from going into extrinsic evidence to show the true character and design of the bill of sale, we do not think applicable to the question before us. No effort is here made to impeach or defeat the title transferred by this conveyance, or to alter or impair the rights of the *cestui que use* under it, as far as relates to the property which it professes to convey; but the inquiry is into the title of the parties to other property, in which this bill of sale is incidentally used as evidence, and comes, as it were, collaterally

in question.    If the door to such an examination were occluded, the provisions of the act of 1798, respecting advancements, would become a dead letter in most cases where written instruments are used to give validity to the settlement intended; as it most rarely occurs, that some money consideration is not expressed in the deed.    If such a barrier to the discovery of truth, and the administration of justice, were to be sanctioned, it would be contrary to the whole scope and design of those just, important, and salutary principles of our government, which provide for an equal distribution of an intestate's estate amongst all his representatives—it would, in effect, repeal one of the wisest, and most wholesome provisions of our testamentary system.

JUDGMENT AFFIRMED.